UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

IN RE:
KENNETH S. PEIRCE AND
MARGARET M. PEIRCE,                          Chapter 7
         DEBTORS.                            Case No. 11-15718-WCH

**MEMORANDUM OF DECISION**

**I. INTRODUCTION**

The matters before the Court are the "Trustee's Notice of Intention to Amend Terms and Conditions of Kenneth S. and Margaret M. Peirce Revocable Trust"[1] (the "Notice to Amend") and the "Application of Chapter 7 Trustee to Employ Real Estate Broker"[2] (the "Application to Employ") filed by Donald R. Lassman (the "Trustee"), the Chapter 7 trustee, the "Debtor's Emergency Motion, (1) To Compel Chapter 7 Trustee to Comply with this Court's Memorandum of Decision, (2) To Strike Trustee's Notice of Intention to Amend Terms and Conditions of Kenneth S. and Margaret M. Peirce Revocable Trust, (3) To Strike Application of Chapter 7 Trustee to Employ Real Estate Broker, and (4) To Pay Reasonable Attorney's Fees and Costs to Counsel to the Debtor"[3] (the "Motion to Compel") filed by Kenneth S. Peirce and Margaret M. Peirce (collectively, the "Debtors"), the "Chapter 7 Trustee's Opposition to [the Motion to Compel]"[4] (the "Trustee's Opposition"), the "Debtors' Opposition to the Chapter 7 Trustee's

---

[1] Docket No. 72.

[2] Docket No. 71.

[3] Docket No. 73.

[4] Docket No. 79.

1

Application to Employ Broker"[5] (the "Opposition to Application"), and the "Debtors' Opposition to Chapter 7 Trustee's Notice of Intention to Amend Terms and Conditions of Trust"[6] (the "Opposition to Notice"). In sum, the Debtors seek to prevent the Trustee from amending a trust document to permit him to sell certain real estate upon which they have a valid homestead exemption in a life estate. For the reasons set forth below, I will deny the Motion to Compel and approve the Application to Employ.

## II. BACKGROUND

On December 28, 2004, the Debtors conveyed certain real property located at 330 Huttleston Avenue, Fairhaven, Massachusetts (the "Property") by deed (the "Deed") to themselves as trustees of the Kenneth S. Peirce, Jr. and Margaret M. Peirce Revocable Trust (the "Trust"), naming their children as beneficiaries, but reserving, as will be explained below, an interest in the Property for themselves.[7] The Trust instrument further granted the Debtors, as settlors of the Trust, a life estate in the Trust *res* and expressly provides that they "may revoke or from time to time amend this instrument in whole or in part . . . ."[8] On April 1, 2011, the Debtors executed and recorded a declaration of homestead (the "Homestead") with respect to the Property pursuant to Mass. Gen. Laws ch. 188, § 1A.[9] The Debtors estimate the current value of the Property to be approximately $240,000.[10]

---

[5] Docket No. 82.

[6] Docket No. 83.

[7] *In re Peirce*, 467 B.R. 260, 261-262 (Bankr. D. Mass. 2012).

[8] Kenneth S. and Margaret M. Peirce Revocable Trust, Docket No. 53, Ex. B at 9.

[9] *In re Peirce,* 467 B.R at 262. *See* Mass. Gen. Laws ch. 188, § 1A (2010).

[10] *In re Peirce*, 467 B.R. at 263.

On June 15, 2011, the Debtors filed a voluntary Chapter 7 petition.[11] Initially, the Debtors did not include the Property on Schedule A – Real Property ("Schedule A"), but appropriately listed their interest in the Trust on Schedule B – Personal Property ("Schedule B") under the category "Equitable or future interests, life estates, and rights or powers exercisable for the benefit of the debtor other than those listed in Schedule A - Real Property."[12] Similarly, the Debtors claimed the Homestead in the amount of $500,000 in what they described as "an equitable interest and or future interest in the Trust" on Schedule C – Property Claimed as Exempt ("Schedule C").[13] While the Debtors specified Mass. Gen. Laws ch. 188, § 1A as the basis for their exemption on Schedule C, a substantial revision of the statute became effective on March 16, 2011, making the proper basis of their exemption Mass. Gen. Laws ch. 188, § 2.[14]

On December 12, 2011, the Trustee filed an Objection of Chapter 7 Trustee to Homestead Exemption of Debtors (the "Objection to Homestead"), seeking, *inter alia*, a determination that the Homestead was limited to the Debtors' life estate interests in the Property and, because the Homestead did not identify the Debtors as trustees, limited to the amount of $125,000.00.[15] In response, the Debtors sought to amend Schedules A and C to reclassify their interest in the Property as one in fee simple, explaining that upon a closer inspection of the Deed, they transferred only a future interest in the Property, thus rendering the Objection to Homestead

---

[11] *Id.*

[12] *Id.*

[13] *Id.*

[14] *Id.* at 262 n.5.

[15] *Id.* at 263-264.

3

unfounded.[16] The Trustee objected to the amendments, and after a hearing, I took the matter under advisement.[17]

On March 14, 2012, I issued a Memorandum of Decision (the "Decision"), finding that the Debtors effectively transferred their interest in the Property to the Trust while reserving only a life estate for themselves.[18] I further concluded that the Homestead protected "their life estate interest beyond the automatic $125,000 homestead exemption provided for in Mass. Gen. Laws ch. 188, §§ [sic] 4," despite their failure to indicate that they were executing it as trustees.[19] Accordingly, I overruled the Objection to Homestead and denied the Debtors' motions to amend schedules.[20] Neither party appealed.

This, however, did not end matters. On May 15, 2012, the Trustee filed the Notice to Amend and Application to Employ. In summary, the Trustee through the Notice to Amend seeks utilize the Debtors' reserved power to amend the Trust to appoint himself as "Special Trustee" of the Trust with the power to sell the Property and direct that the net proceeds of any such sale, less the value of the Debtors' life estate as determined by the appropriate tables promulgated by the Internal Revenue Service, be distributed to the Trustee.[21] To that end, the Trustee also requests that I approve the employment of Anthony P. Camarra Jr. and Camber Real Estate, Inc. as his real estate broker with respect to the Property. The Trustee proposes to pay Camarra, who

---

[16] *Id.*

[17] *Id.*

[18] *Id.* at 266.

[19] *Id.* at 267.

[20] *Id.*

[21] Notice to Amend, Docket No. 72 at ¶¶ 1-3. While the proposed language only directs that the net proceeds will be distributed to the "Bankruptcy Trustee," it is implicit that the contemplated transfer would be for the benefit of the estate.

4

is disinterested within the meaning of 11 U.S.C. § 101(14), a 6% commission on the gross proceeds of from the closing of a sale on the Property.

On May 21, 2012, the Debtors filed the Motion to Compel, arguing that the Trustee was attempting to circumvent the Homestead in disregard of the Decision and dispossess the Debtors of their life estate without authority under 11 U.S.C. § 363. Three days later, the Trustee filed the Trustee's Opposition, asserting that his actions were completely consistent with my finding that the Debtors were entitled to exempt no more than a life estate interest. I conducted a hearing on the Motion to Compel on May 25, 2012, at the conclusion of oral arguments, took the matter under advisement. I afforded both parties an opportunity to file briefs, which they both did on July 16, 2012. With my leave, the Trustee also filed a Reply on August 1, 2012.

On May 29, 2012, the Debtors filed the Opposition to Notice and Opposition to Employment. In substance, these oppositions simply reiterate the Debtors' belief that the Trustee has no right to force the sale of the Property. At the request of the Debtors, I entered an order on June 4, 2012, continuing the Notice to Amend and Application to Employ generally pending the resolution of the Motion to Compel. Nevertheless, as the Opposition to Notice and the Opposition to Employment simply rely on the arguments contained in the Motion to Compel, I find further hearings on those matters unnecessary and will consolidate them with the matters now under advisement.

### III. POSITIONS OF THE PARTIES

<u>The Debtors</u>

For a plethora of reasons, the Debtors urge me to strike the Notice to Amend and Application to Employ, order the Trustee to file a No Asset Report, and pay the Debtors' counsel's fees incurred in opposing the Notice to Amend and Application to Employ. First, they

argue that the Trustee's actions are nothing more than a shameless attempt to circumvent the Decision and relitigate an issue that has already been decided. The Debtors explain that I "explicitly rul[ed] that the Debtors are entitled to homestead protection under MGL 188, Section 4,"[22] and that I "also held that the Debtors reserved a life state interest in the property and *could reside on the property for the remainder of both of their lives*."[23] In contrast, they assert that the Trustee "blatantly defies the [C]ourt's March 14, 2012 order holding that Debtors enjoy a life estate interest in the property, with homestead exemption protection,"[24] by seeking to dispossess them, which would have the practical effect of "deny[ing] the Debtors the very legal interests which this Court previously ordered . . . ."[25] Therefore, because "[i]t is clear to the Debtors' [sic] that this Court meant to keep the home from the reach of the Trustee's powers," they contend his actions must be barred under the doctrines of res judicata, collateral estoppel, and law of the case.[26]

Next, the Debtors argue that the Trustee's proposed sale of the Property is prohibited by 11 U.S.C. §§ 363(e), (f) and (h). With respect to 11 U.S.C. § 363(e), the Debtors posit that they are "entit[ies] that ha[ve] an interest in property" within the meaning of that provision, entitling them to adequate protection from the Trustee.[27] They assert that the Trustee's plan actually proposes the opposite, as the extinguishment of their life estate can hardly be said to be adequate

---

[22] Motion to Compel, Docket No. 73 at ¶ 3.

[23] Debtors' Memorandum of Law in Support of Debtors' Emergency Motion ("Debtors' Brief"), Docket No. 99 at ¶ 18 (emphasis added).

[24] *Id.* at ¶ 20.

[25] *Id.* at ¶ 21.

[26] Motion to Compel, Docket No. 73 at ¶ 3.

[27] 11 U.S.C. § 363(e).

6

protection of the interest. Moreover, they assert that 11 U.S.C. § 363(f) would prohibit the sale of the Property because Massachusetts law would not allow the sale in light of the valid homestead. Furthermore, the Debtors cite *In re Hajjar*[28] for the proposition that life estates are expressly excluded from the Trustee's liquidation powers under 11 U.S.C. § 363(h).

Alternatively, if I find that the Trustee is authorized to sell the Property, the Debtors contend that he cannot satisfy 11 U.S.C. § 363(h)'s requirement that the benefit to the estate outweigh the detriment to the co-owners. First, they argue that "the value of the Debtors' life estate interest cannot be conclusively determined prior to the Debtors' death," and therefore "[a]ny value theory proposed by the Trustee is too speculative, as well as extremely blatantly insulting and prejudicial . . . ."[29] In support, they note that for purposes of determining estate taxes, a life estate interest cannot be determined until after the death of the holder and that the use of actuarial tables is not conclusive. Second, the Debtors assert that a sale will not yield any surplus for the estate because the value of their exemption in the Property is more than twice the estimated value of the Property itself. They also contend that they would be entitled to exempt the entire proceeds from the sale under Mass. Gen. Laws ch. 188, § 11, precluding any recovery by the Trustee.

To the extent that I do not find any of these arguments persuasive, the Debtors would have me grant them relief under 11 U.S.C. § 105(a) and prohibit the Trustee's actions as "onerous, inequitable, and in violation of the letter and spirit of the United States Bankruptcy Code."[30] Indeed, the Debtors argue that the net effect of the Trustee's intended actions would be

---

[28] *Braunstein v. Hajjar (In re Hajar)*, 385 B.R. 482 (Bankr. D. Mass. 2008).

[29] Debtors' Brief, Docket No. 99 at ¶ 10.

[30] *Id.* at V.

7

to remove their life estate and "preclude the Debtors from their legal right to reside in their family home."[31] Such a result defies the spirit of the homestead laws and the "strong public policy . . . that favors the preservation of the family home regardless of the residents' financial situation," and denies the Debtors the "fresh start" intended by the Bankruptcy Code.[32]

### The Trustee

The Trustee contends that his intended actions are completely consistent with the Decision because all I found was that the Debtors have a life estate in the Property subject to the Homestead. From there, he reasons that the life estate is merely property of the estate subject to a limited monetary exemption in the amount of $500,000. The Trustee notes that life estates are alienable interests and argues that courts routinely look to actuarial data to determine the monetary value of the interest. Relying on *Schwab v. Reilly*, he asserts that it is settled law that a trustee may sell an asset subject to a limited monetary amount if excess value may be obtained so long as the trustee pays the debtor the amount of the exemption from the sale proceeds.[33] Therefore, he concludes, because the Debtors hold only a fractional interest in the Property, there will be proceeds available above their exemption.

In further support of his intended actions, the Trustee explains that the Debtors' power to amend the Trust is also property of the estate under 11 U.S.C. § 541, enabling him to appoint himself special trustee with the authority to sell the Property. He counters the Debtors' arguments 11 U.S.C. § 363 by emphasizing that the Debtors hold the life estate, rendering those provisions inapplicable. Moreover, the Trustee questions whether the Debtors are truly

---

[31] *Id.* at ¶ 23.

[32] *Id.* at ¶ 26.

[33] *Schwab v. Reilly*, 130 S.Ct. 2652, 2668, 177 L.Ed.2d 234 (2010).

"entit[ies]" within the meaning of 11 U.S.C. § 363(e), but in any event states that their interest would be adequately protected by the receipt of the cash value of their exemption.

In sum, the Trustee argues that the Debtors' preclusion arguments fail because they do not possess a valid homestead in a fee simple interest in the Property. Therefore, he asks that the Debtors pay his fees associated with these matters because they essentially seek relief that has already been denied and is plainly at odds with applicable law.

## IV. DISCUSSION

From the outset, I reiterate that the Debtors do not hold a fee simple interest in the Property. To the contrary, I have already found that they hold nothing more than a life estate and are "entitled to homestead protection *for their life estate interest* beyond the automatic $125,000 homestead exemption . . . ."[34] I stress that those were my only findings—I never said that the Trustee could not sell the Property or that the Debtors "could reside on the property for the remainder of both of their lives."[35] Nevertheless, in light of the issues raised by the Debtors, more must be said about the nature of both their life estate interest and the Homestead.

Put simply, a life estate is "an estate which is specifically described as to duration in terms of the life or lives of one or more human beings, and is not terminable at any fixed or computable period of time."[36] "It is basic property law that a life estate is created by dividing an estate in property by its present and future interests."[37] Indeed,

---

[34] *In re Peirce*, 467 B.R. at 266-267 (emphasis added).

[35] Debtors' Brief, Docket No. 99 at ¶ 18.

[36] Restatement (First) of Property § 18 (1936).

[37] *Dowd v. Stebbins*, No. 356120 (CWT), 2009 WL 1915207, at *8 (Mass. Land Ct. July 6, 2009) *judgment entered*, No. 356120 (CWT), 2009 WL 1915210 (Mass. Land Ct. July 6, 2009), *aff'd sub nom. Dowd v. Johnson*, 78 Mass. App. Ct. 1117, 939 N.E.2d 135 (2010).

9

> [t]hese divided interests are held in *separate* ownership. The rights of the holder of the present interest are limited in duration by the measuring life and to certain use of the property, because the future interest in the property is held by a remainderman or retained by the grantor.[38]

Therefore, a life estate fundamentally is a fractional interest in property.

That said, even a fractional interest in property has value. The Debtors do not dispute this point, but instead contend that determining that value is impossible so long as they, the measuring lives, remain alive. This is, of course, ridiculous. Both federal and state courts have been called upon repeatedly to determine the value of life estates in numerous contexts,[39] and even authority cited by the Debtors acknowledge that such methods exist.[40] In each instance, the method most commonly employed is to determine the value of the life estate by reference to actuarial tables.[41] The Debtors have offered no compelling reason why "using appropriate tables promulgated by the Internal Revenue Service" would not accurately value their life estate interests.[42] In any event, valuation is not the issue presently before me. For today, it is enough to say that the value of the Debtors' life estates is ascertainable and that the Trustee's intention to use such tables to determine that value is reasonable.

---

[38] *Id.* (emphasis in original).

[39] *See, e.g., Simpson v. United States*, 252 U.S. 547 (1920) (valuing life estate for purposes of determining tax); *Pletz v. United States (In re Pletz)*, 221 F.3d 1114, 1117 (9th Cir. 2000) (valuing wife's life estate for purposes of forced tax sale of husband's tenancy by the entirety interest); *Harris v. United States*, 764 F.2d 1126, 1131 (5th Cir. 1985) (valuing wife's life estate for purposes of determining extent of homestead protection from tax lien against husband's interest in the property); *Nelson v. Killman (In re Killman)*, No. 08-61703, 2010 WL 743685 (Bankr. W.D. Mo. Feb. 26, 2010) (valuing life estate for purpose of sale); *In re Murray*, 318 B.R. 211 (Bankr. M.D. Fla. 2004) (valuing interest of debtor in real property held by tenancy by entireties); *Rubin v. Burns (Matter of Burns)*, 73 B.R. 13 (Bankr. W.D. Mo. 1986) (valuing life estate for purpose of determining whether value exceeded homestead exemption); *Howe v. Howe*, 179 Mass. 546, 550, 61 N.E. 225, 226 (1901) (valuing life estate for tax purposes); *Sgroi v. Leo*, 71 Mass. App. Ct. 1111, 881 N.E.2d 828 (2008) (valuing life estate for purpose of clearing title); *Child v. Child*, 58 Mass. App. Ct. 76, 78, 787 N.E.2d 1121, 1123 (2003) (valuing life estate for purpose of divorce).

[40] *In re Killman*, 2010 WL 743685 at *8 ("methods for valuing life estates in property exist").

[41] *See supra* footnote 39.

[42] Notice to Amend, Docket No. 72 at ¶ 3.

10

Next, I must flesh out the contours of the Homestead's protection. Mass. Gen. Laws ch. 188, § 2 provides in relevant part:

> The estate of homestead of each owner who is an elderly or disabled person, regardless of marital status, shall be protected under this section against attachment, seizure, execution on judgment, levy and sale for payment of debts and legacies, except as provided in subsection (b) of section 3, to the extent of the declared homestead exemption . . . .[43]

A "declared homestead exemption" is defined, subject to certain exceptions not relevant here, as "an exemption in the amount of $500,000 created by a written declaration, executed and recorded pursuant to section 5 . . . ."[44] On Schedule C, the Debtors claimed an exemption in the amount of $500,000. At this stage, it is established that the Homestead protects their interest in their life estates to that amount, but does it protect more than that?

The Debtors argue is that the Homestead is a possessory exemption, allowing them remain in their family home for the duration of their lives, but as is evident from the language quoted above, Mass. Gen. Laws ch. 188 only protects the owner's interest in the home to the extent of the monetary exemption. Given this unambiguous language, there is simply no room to construe the statute in the way the Debtors urge. Therefore, so long as the available monetary exemption is greater than or equal to the value of that property, the owner's possessory and pecuniary interests are both fully protected. Where, however, the value of the property exceeds the available exemption, the statute offers no protection to the possessory interest and protects the pecuniary interest only to the extent of the available monetary exemption.

The convoluted facts of this case put a different spin on the example, but the result is the same. Here, the Debtors hold only a fractional interest in the Property and their exemption

---

[43] Mass. Gen. Laws ch. 188, § 2(a).

[44] Mass. Gen. Laws ch. 188, § 1.

protects only that fractional interest. Assuming, *arguendo*, that the Property is worth approximately $240,000 as the Debtors say, it necessarily follows that their life estate is worth less than $240,000. While the Debtors are entitled to an exemption of up to $500,000 in their interest in the Property, on a practical level, the exemption is limited by the value of their life estates. Therefore, even if the Debtors' interest in their life estates is wholly exempt, which the Trustee does not seem to dispute, the value of the exemption remains less than the value of the Property.

Precisely because the value of the Property exceeds the value of the Debtors' exempt interest in it, the Trustee relies on *Schwab v. Reilly* for the proposition that he "may sell an asset subject to an exemption in a limited monetary amount if excess value may be obtained from the sale for the estate so long as the trustee pays the debtor the amount of the exemption from the sale proceeds."[45] This reliance, however, is misplaced. *Schwab v. Reilly* holds that where the face value of the exemption is unobjectionable under the Bankruptcy Code, the objection deadline set forth in Fed. R. Bankr. P. 4003(c) is inapplicable, and the trustee is not required to object to the debtor's claimed exemption to preserve the estate's right to retain any value in the property beyond the value of the exempt interest.[46] That case is inapposite because the Trustee is not trying to retain non-exempt value in property of the estate. Indeed, as previously stated, it is doubtful that there is any non-exempt value attributable to the Debtors' life estate interest. To the contrary, the value the Trustee seeks to capture arises from the remainder interest in the Property which is *not* property of the estate.[47]

---

[45] Trustee's Opposition, Docket No. 79 at ¶ 10.

[46] *Schwab v. Reilly,* 130 S.Ct. at 2669.

[47] As will be discussed below, there is ample authority to support bringing such property into the estate through either an avoidance action under 11 U.S.C. § 544 or a declaratory judgment under 11 U.S.C. § 541(a). Nevertheless,

That distinction, however, does not end the inquiry in light of how the Trustee plans to snatch the value. The Debtors not only reserved a life estate in the Property through the Deed, but also granted themselves a life estate in the Trust *res* and reserved the power to "revoke or from time to time amend this [Trust] instrument in whole or in part."[48] The Trustee seeks to use that power create new Trust terms under which he would be appointed Special Trustee of the Trust and authorized to, *inter alia*, sell the Property subject only to bankruptcy court approval. Upon such a sale, the amended terms would require him, as Special Trustee of the Trust, to distribute the net proceeds, less the value of the life estate retained by the Debtors, to himself, as Chapter 7 trustee of the Debtors' estate. Essentially, the Trustee intends to substitute the bankruptcy estate as the beneficiary of the remainder interest using the Debtors' power to amend the Trust.[49] Moreover, the clear import of these amendments is that any sale of the Property would be effectuated by the Special Trustee pursuant to powers afforded him by the amended terms of the Trust, *not* the (Chapter 7) Trustee pursuant to 11 U.S.C. § 363.[50] Therefore, the success of the Trustee's plan hinges on whether he may exercise the Debtors' power to amend the Trust.[51]

---

the Trustee has opted to utilize an alternative method that is conceptually premised on the Trust *res* not being property of the estate.

[48] Kenneth S. and Margaret M. Peirce Revocable Trust, Docket No. 53, Ex. B at 9.

[49] Notably, the Debtors' estate is a beneficiary only to the extent of the net proceeds arising from the sale of the Property. This is logical as there is little point in vesting an interest in the estate that ultimately may be abandoned if it cannot be liquidated. This also suggests that this entire dispute may be for naught unless the Trustee is able to sell the Property.

[50] Indeed, because the Special Trustee is selling the Property, it is irrelevant whether the Trustee could sell the Property free and clear of their life estates under 11 U.S.C. § 363.

[51] I note that the Debtors have not specifically articulated an objection to the Trustee exercising their power to amend the Trust.

13

Pursuant to 11 U.S.C. § 541, "all legal or equitable interests of the debtor in property as of the commencement of the case" became property of the estate.[52] Section 541 is construed "broadly to bring any and all of the debtor's property rights within the bankruptcy court's jurisdiction."[53] "Unless some federal interest requires a different result,"[54] "the existence and extent of the debtor's *interest* [in property] is ordinarily a creature of state law."[55] Nevertheless, the United States Court of Appeals for the First Circuit has observed that

> [t]he label . . . that state law affixes to a particular interest in certain contexts is not always dispositive. The principal question is whether the substance of the right or interest in question brings it within the scope of estate property under the Bankruptcy [Code].[56]

In *Nat'l Shawmut Bank of Boston v. Joy*, the Supreme Judicial Court of Massachusetts held that a power to alter, amend, or revoke a trust is not property under Massachusetts law, but there are reasons why that label should not be dispositive here.[57] To start, while the Supreme Judicial Court expressly stated that "[a power to alter, amend, or revoke] is not property," it went on to note that "*apart from the Bankruptcy Act* [it] cannot be reached by creditors"[58] and cited Comment o. to § 330 of the Restatement (First) of Trusts, which provides in relevant part:

---

[52] 11 U.S.C. § 541(a)(1).

[53] *Marrama v. DeGiacomo (In re Marrama)*, 316 B.R. 418, 422 (B.A.P. 1st Cir. 2004) (*citing United States v. Whiting Pools, Inc.*, 462 U.S. 198, 205 n. 9, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983)).

[54] *Butner v. United States*, 440 U.S. 48, 55, 99 S. Ct. 914, 918, 59 L. Ed. 2d 136 (1979).

[55] *Abboud v. The Ground Round, Inc. (In re The Ground Round, Inc.)*, 482 F.3d 15, 17 (1st Cir. 2007) (emphasis in original).

[56] *Id.* (*quoting In re Nejberger*, 934 F.2d 1300, 1302 (3d Cir. 1991)). *See 229 Main St. Ltd. P'ship v. Massachusetts Department of Environmental Protection (In re 229 Main St. Ltd. P'ship),* 262 F.3d 1, 6 (1st Cir. 2001); *21 West Lancaster Corp. v. Main Line Restaurant, Inc.*, 790 F.2d 354 (3d Cir. 1986).

[57] *Nat'l Shawmut Bank of Boston v. Joy*, 315 Mass. 457, 472-74, 53 N.E.2d 113, 124 (1944) ("The power [of appointment] itself, however general, is not property . . . . The power to revoke, if not a kind of power of appointment . . . is akin to such a power. It is not property . . . .").

[58] *Id.* at 474.

14

> Under the National Bankruptcy Act, § 70a (3), it is provided that all powers which the bankrupt might have exercised for his own benefit can be reached by the trustee in bankruptcy. Under this provision the trustee in bankruptcy can reach the bankrupt's power to revoke a trust created by him.[59]

Section 70a (3) of the Bankruptcy Act is the predecessor to § 541 of the Bankruptcy Code.[60] Admittedly, this citation predates the Supreme Court's holding that property rights are to be analyzed by reference to state law, but it nonetheless suggests that the Supreme Judicial Court did not mean to define a power to alter, amend, or revoke a trust outside the grasp of a bankruptcy trustee.

Additionally, developments in trust law since *Nat'l Shawmut Bank of Boston v. Joy* indicate that "[t]he clear import of the recent Massachusetts cases is to look at the indicia of ownership and not the form in which the property is held,"[61] recognizing that in many contexts, "the power of amendment and revocation makes the beneficial ownership of the trust property, as a practical matter . . . essentially equivalent to outright ownership by the settlor."[62] Moreover, "'[t]he established policy of this Commonwealth long has been that a settlor cannot

---

[59] Restatement (First) of Trusts § 330, comment o. (1935).

[60] *Cf.* Section 70a. of the Bankruptcy Act, 11 U.S.C. § 110 (1952) ("The trustee of the estate of a bankrupt and his successor or successors, if any, upon his or their appointment and qualification, shall in turn be vested by operation of law with the title of the bankrupt as of the date of the filing of the petition initiating a proceeding under this Act, except insofar as it is to property which is held to be exempt, to all of the following kinds of property wherever located . . . (3) powers which he might have exercised for his own benefit, but not which he might have exercised solely for some other person . . . .") *with* § 541 of the Bankruptcy Code, 11 U.S.C. § 541(a)(1), (b)(1) ("Such estate is comprised of all the following property, wherever located and by whomever held: . . . all legal or equitable interests of the debtor in property as of the commencement of the case," but does not include "any power that the debtor may exercise solely for the benefit of an entity other than the debtor.").

[61] *In re Cowles*, 143 B.R. 5, 9 (Bankr. D. Mass. 1992).

[62] *Kirby v. Bd. of Assessors of Medford*, 350 Mass. 386, 389, 215 N.E.2d 99, 102 (1966). *See Massachusetts Co., Inc. v. Berger*, 1 Mass. App. Ct. 624, 629, 305 N.E.2d 123, 126 (1973) ("*See* Am. Law of Property, s 23.4, pp. 467-468, referring to a donee of a general power, 'Although technically he has no title to the property until he exercises the power, he can obtain the title, and thereafter enjoy all the benefits of ownership, simply by going through a mere formality. In order to enjoy the property he has but to reach for it.'")

place property in trust for his own benefit and keep it beyond the reach of creditors.'"[63] In State

*St. Bank & Trust Co. v. Reiser*, the Massachusetts Court of Appeals explained:

> There has developed, however, another thread of decisions which takes cognizance of, and gives effect to, the power which a person exercises in life over property. When a person has a general power of appointment, exercisable by will or by deed, and exercises that power, any property so appointed is, in equity, considered part of his assets and becomes available to his creditors in preference to the claims of his voluntary appointees or legatees. *Clapp v. Ingraham*, 126 Mass. 200, 202 (1879); *Shattuck v. Burrage*, 229 Mass. 448, 452, 118 N.E. 889 (1918); *State Street Trust Co. v. Kissel*, 302 Mass. 328, 333, 19 N.E.2d 25 (1939). *Compare Prescott v. Wordell*, 319 Mass. 118, 120, 65 N.E.2d 19 (1946). These decisions rest on the theory that as to property which a person could appoint to himself or his executors, the property could have been devoted to the payment of debts and, therefore, creditors have an equitable right to reach that property. It taxes the imagination to invent reasons why the same analysis and policy should not apply to trust property over which the settlor retains dominion at least as great as a power of appointment. The Restatement of Property has, in fact, translated the doctrine applicable to powers of appointment to trusts: "When a person transfers property in trust for himself for life and reserves a general power to appoint the remainder and creates no other beneficial interests which he cannot destroy by exercising the power, the property, though the power is unexercised, can be subjected to the payment of the claims of creditors of such person and claims against his estate to whatever extent other available property is insufficient for that purpose." Restatement of Property, s 328 (1940). *See also*, for the assimilation of a power to revoke to a general power of appointment, concurring opinion of Goodman, J., in *Massachusetts Co. v. Berger*, 1 Mass.App. 624, 628 n.3, 305 N.E.2d 123 (1973).
>
> \* \* \*
>
> We hold, therefore, that where a person places property in trust and reserves the right to amend and revoke, or to direct disposition of principal and income, the settlor's creditors may, following the death of the settlor, reach in satisfaction of the settlor's debts to them, to the extent not satisfied by the settlor's estate, those assets owned by the trust over which the settlor had such control at the time of his death as would have enabled the settlor to use the trust assets for his own benefit.[64]

---

[63] *Ware v. Gulda*, 331 Mass. 68, 70, 117 N.E.2d 137, 138 (1954) (*quoting Merchants Nat. Bank of New Bedford v. Morrissey*, 329 Mass. 601, 605, 109 N.E.2d 821, 823 (1953)).

[64] *State St. Bank & Trust Co. v. Reiser*, 7 Mass. App. Ct. 633, 637-638, 389 N.E.2d 768, 771 (1979)

*Reiser*'s holding has been endorsed by the Supreme Judicial Court[65] and extended to situations where the settlor retains broad powers to amend or revoke the trust and to substitute its beneficiaries even where the settlor lacked a beneficial interest.[66] "[T]he importance of this case and others arriving at the same conclusion should not be underestimated, as prior to these recent decisions, a power of revocation was not regarded as an interest in property reachable by creditors."[67]

This trend has been acknowledged by the federal courts as well. While the United States Court of Appeals for the First Circuit previously stated in *George v. Kitchens by Rice Bros., Inc.*, that "a power of revocation under Massachusetts law is not considered property,"[68] it later clarified in *Markham v. Fay*, that "*George* remains a correct interpretation of Massachusetts law where . . . the only power reserved by the settlor, who was . . . not a beneficiary, was the power

---

[65] *Nile v. Nile*, 432 Mass. 390, 395, 734 N.E.2d 1153, 1158 (2000) ("During his lifetime, Nile enjoyed all the indicia of ownership of the property he placed in the trust. The trust was revocable, and he was settlor, trustee, and sole beneficiary. Because of the interest, he retained, the successor trustees hold the trust property subject to the claims of creditors.").

[66] *ITT Commercial Fin. Corp. v. Stockdale*, 25 Mass. App. Ct. 986, 987, 521 N.E.2d 417, 418 (1988) ("In view of the settlor's power to amend and revoke the trust and to substitute beneficiaries, a power retained until death, summary judgment could also rest on the creditor's right to reach the trust property as if it had been the debtor's own."); *New England Phoenix Co., Inc. v. LaFauci*, CIV.A. 10-02030, 2012 WL 845600, at *2 (Mass. Super. Jan. 25, 2012) ("In Massachusetts, a plaintiff can reach trust property to satisfy a judgment if "the trust instrument as a whole gives [the defendant] the power to eliminate the interests of all others in the trust (emphasis added)."); *Greater Boston Legal Services v. Haddad*, No. 935961, 2000 WL 1474516, at *34 (Mass. Super. Ct. June 28, 2000) ("Recent Massachusetts case law, however, has held that when a settlor retains the power to revoke or amend the trust, creditors can reach the trust assets to satisfy the debts of the settlor, regardless of whether the settlor was a named beneficiary or not.").

[67] *In re Cowles*, 143 B.R. at 9.

[68] *George v. Kitchens by Rice Bros., Inc.*, 665 F.2d 7, 8 (1st Cir. 1981).

17

to revoke."[69]  *Reiser* and its progeny have also been regularly cited by bankruptcy courts as justification to allow trustees and creditors to bring trust property into the bankruptcy estate.[70]

Admittedly, reported decisions reveal that trustees often commence adversary proceedings seeking either to avoid a transfer to the trust under 11 U.S.C. § 544 or a declaratory judgment that the trust res is property of the estate under 11 U.S.C. § 541(a).[71]  Such actions fall squarely within *Reiser*.  It is notable, however, that several bankruptcy courts have also granted trustees authority to exercise powers to alter, amend, or revoke in conjunction with their rulings that the trust property is property of the estate.[72]  Although the Supreme Judicial Court has stated that such powers are "not property," this is logical because a bankruptcy trustee, unlike a state law creditor, is tasked with marshaling assets and liquidating them on behalf of the creditors and therefore must take possession of the trust property.  In *In re Lipp*, Judge Boroff questioned the necessity of formal adjudication of the Chapter 7 trustee's rights in the context of an adversary proceeding where the court had already overruled an objection to the trustee's notice of intention to amend the trust.[73]  Therefore, in light of all this authority, I find that the Debtors' power to amend the Trust is a property interest that came into the estate upon the commencement of the Debtors' case and may be exercised by the Trustee.[74]

---

[69] *Markham v. Fay*, 74 F.3d 1347, 1360 (1st Cir. 1996).

[70] *See, e.g., In re Marrama*, 316 B.R. at 423; *Beatrice v. Braunstein (In re Beatrice)*, 296 B.R. 576, 580 (B.A.P. 1st Cir. 2003); *Braunstein v. Grassa (In re Grassa)*, 363 B.R. 650, 655-657 (Bankr. D. Mass. 2007); *Riley v. Tougas (In re Tougas)*, 338 B.R. 164, 174-175 (Bankr. D. Mass. 2006); *In re Cowles*, 143 B.R. at 8.

[71] *See, e.g., In re Beatrice*, 296 B.R. at 580; *Nickless v. Lipp (In re Lipp)*, 07-43490-HJB, 2009 WL 2032127 (Bankr. D. Mass. July 6, 2009); *In re Grassa*, 363 B.R. at 660; *In re Tougas*, 338 B.R. at 173; *see also In re Cowles*, 143 B.R. at 8 (analyzing a hypothetical avoidance action for purposes of determining whether a Chapter 13 debtor's liquidation analysis should include trust property).

[72] *See, e.g., In re Marrama*, 316 B.R. 422-423; *In re Beatrice*, 277 B.R. at 441; *In re Lipp*, 2009 WL 2032127 at *6.

[73] *In re Lipp*, 2009 WL 2032127, at *5-6.

[74] I also agree with Judge Boroff that a further adversary proceeding is unnecessary.

18

As a further challenge to the contemplated sale of the Property, the Debtors erroneously contend that it would not yield a benefit to the estate because the value of their exemption is more twice the value of the Property. This conveniently ignores the fact that I previously ruled that they do not own the Property in fee simple. Therefore, the value of their exemption, regardless of its amount, is not in the value of the Property, but in a fraction of the value of the Property. Similarly, the Debtors cannot rely on Mass. Gen. Laws ch. 188, § 11, which provides a limited exemption for proceeds arising from the sale of Property subject to an estate of homestead, to exempt proceeds arising from the sale of an interest they do not own.[75]

As a final plea, the Debtors' beg that I invoke the equitable powers afforded me under 11 U.S.C. § 105(a) to protect their Homestead and ensure them the "fresh start" intended by the Bankruptcy Code. Section 105(a) allows me to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title,"[76] but my "equitable discretion is limited and cannot be used in a manner inconsistent with the commands of the Bankruptcy Code."[77] Nevertheless, I find that the result in this case is neither perverse nor inequitable. The Supreme Judicial Court of Massachusetts has repeatedly held that "'[t]he established policy of this Commonwealth long has been that a settlor cannot place property in trust for his own benefit and keep it beyond the reach of creditors.'"[78] There is simply no reason why their Homestead should extend to property in which they do not have an interest.

---

[75] *See* Mass. Gen. Laws ch. 188, § 11.

[76] 11 U.S.C. § 105(a).

[77] *In re Plaza de Diego Shopping Ctr., Inc.*, 911 F.2d 820, 830-31 (1st Cir. 1990).

[78] *Ware v. Gulda*, 331 Mass. 68, 70, 117 N.E.2d 137, 138 (1954) (*quoting Merchants Nat. Bank of New Bedford v. Morrissey*, 329 Mass. 601, 605, 109 N.E.2d 821, 823 (1953)).

**V. CONCLUSION**

In light of the foregoing, I will enter an order denying the Motion to Compel and approving the Application to Employ.

_____
William C. Hillman
United States Bankruptcy Judge

Dated: October 1, 2012

Counsel Appearing:

    James M. Liston, Michael P. Vernon, Bartlett Hackett Feinberg P.C., Boston, MA,
        for the Trustee
    John F. Sommerstein, Law Offices of John F. Sommerstein, Boston, MA,
        for the Debtors